IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| LOUIS R. LEUELLYN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04-4003-CV-C-SOW |
| ) | |
| THE CURATORS OF THE UNIVERSITY ) | |
| OF MISSOURI, et al., ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are defendant The Curators of the University of Missouri's Motion for Summary Judgment (Doc. # 49), plaintiff Louis R. Leuellyn's Suggestions in Opposition, and defendant's Reply. For the reasons stated below, defendant's motion is granted in part and denied in part.

I. Background

Defendant The Curators of the University of Missouri ("Curators") moves for summary judgment on plaintiff Louis R. Leuellyn's ("Leuellyn") claims that Curators unlawfully discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Counts I & II) and retaliated against him in violation of Title VII (Count III). Specifically, plaintiff alleges that defendant discriminated against him on the basis of race and retaliated against him for engaging in protected activity by terminating his employment as the Head Golf Coach at the University of Missouri-Rolla ("UMR") and as the Assistant Clubhouse Manager at the UMR Golf Course.

The undisputed material facts relevant to the pending summary judgment motion are as

follows: plaintiff Leuellyn was employed at UMR, starting in September 1992. The parties disagree as to plaintiff's job title at that time. Regardless, it is clear from the record that plaintiff was an Assistant Manager at the Clubhouse of the UMR Golf Course. Leuellyn's Full Time Equivalency ("FTE")[1] in September of 1992 was 55%. In September 1996, Leuellyn was hired to work as the Head Golf Coach of the UMR Golf Team, in addition to his duties as Assistant Manager at the Clubhouse. Defendant initially assigned an FTE of 15% to plaintiff's job as the golf coach. His combined FTE at that time became 70%. In September 1998, defendant increased the FTE for plaintiff's job as the golf coach to 27% and decreased his FTE for his job as the Assistant Manager at the Clubhouse to 48%. At that time, Leuellyn's FTE became 75%, and this change was made effective retroactive to September 1996. Leuellyn was also awarded retroactive benefits back to September 1996.

     A.C. "Bud" Mercier ("Mercier") held the position of golf coach immediately prior to plaintiff. At the time Mercier last held the position of golf coach, his job was assigned an FTE of 50%. Plaintiff met with Mark Mullin ("Mullin") the Director of Athletics in February 2003, to discuss the possibility of filing a grievance regarding the lower FTE that defendant assigned to his position as the golf coach. Plaintiff believed that he may have been discriminated against on the basis of his race with regard to the FTE assigned to his position as Head Golf Coach. Plaintiff never filed a grievance regarding the FTE he was assigned as Head Golf Coach.

     Neal Rosenburg ("Rosenburg") was hired by defendant in September 1992 as the Manager of the Clubhouse at UMR. There is again some dispute by the parties as to Rosenburg's

---

[1]Employees of defendant are not eligible for benefits unless they have an FTE of at least 75%.

2

official title at the Clubhouse. Regardless, it is clear that Rosenburg was a Manager. Plaintiff's supervisor as Assistant Clubhouse Manager was Rosenburg. In July 2001, Rosenburg was assigned the additional job duties of supervising the maintenance of the Golf Course. As Manager of the Clubhouse, Rosenburg had an FTE of 55% and was scheduled to work 30 hours per week. In July 2001, James Murphy ("Murphy"), the Director of Residential Life and Student Support Services, became Rosenburg's immediate supervisor. It is disputed by the parties whether Rosenburg was merely given "additional job duties" rather than being given an entirely new position after he assumed responsibility for the grounds and maintenance employees at the golf course. Plaintiff points to numerous facts which would indicate that Rosenburg was given an entirely new position when he assumed responsibility for the grounds and maintenance of the golf course, including: he became a full-time employee and his FTE increased from 55% to 100%, he began working 12 months of the year, rather than 9 months, and Rosenburg's annual salary increased from $17,297 to approximately $31,451 per year.

    Defendant's promotion policy states that a direct promotion shall be available only to employees who are presently employed within the department, or unit, where a vacancy exists. Plaintiff contends that immediately prior to the time that Rosenburg was given the responsibility of supervising the grounds and maintenance employees at the golf course, Rosenburg was not a regular employee within the meaning of defendant's promotion policy and that plaintiff was the only regular employee. Plaintiff Leuellyn's argument is that Murphy never made any attempt to consider plaintiff's skills and qualifications for managing the golf course or supervising the maintenance employees before giving those responsibilities to Rosenburg. Defendant denies these allegations and asserts that Rosenburg was assigned additional job duties and not promoted

3

over plaintiff.

It appears from the record that plaintiff filed four grievances, beginning in March 2002, with the Affirmative Action Office at UMR in which he complained about not being considered for Rosenburg's position as Manager of the Golf Course. The last grievance was responded to by Murphy on November 13, 2002. In November 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that defendant had discriminated against him because of his race.

In 2003, UMR was facing budget issues at the campus as a whole. State appropriations were significantly less than expected, and the UMR campus as a whole, including academic and other areas, were being asked to cut their budgets. Debra Robinson ("Robinson") became the Vice-Chancellor of Student Affairs at UMR in January 2003. At the time that Robinson became the Vice-Chancellor, there was a half million dollar budget deficit in Student Affairs, and Robinson was told by Chancellor Gary Thomas ("Thomas") that significant budget cuts would have to be made. Robinson was further told by Thomas that the Athletics Department, which had not previously borne any of the budget cuts, would have to bear some of the budget cuts in 2003.

Once Robinson knew that the Athletics Department would have to bear some of the budget cuts, Robinson asked Mullin to provide her with a recommendation as to how and where the athletic department cuts should be made. Mullin initially resisted making any cuts in the Athletic Department. Since budget cuts had to be made, Mullin recommended cutting specific sports programs, instead of making across the board cuts to all sports programs. The sports at UMR were already operating at a minimum financial level as compared to UMR's competitors,

and there was no excess to cut from the teams. When Mullin considered the future of the athletics programs at UMR, it was Mullin's opinion that the best plan was to discontinue a couple of teams and move the rest of the teams forward to the future. Mullin recommended eliminating the Tennis and Golf programs at UMR. These were smaller sports, and thus were more vulnerable. Plaintiff testified that he does not know what the financial situation of UMR was in June 2003; nor did plaintiff know the financial situation of the Athletics Department in June 2003.

Robinson asked a follow-up committee to the UMR Task Force on Intercollegiate Athletics to provide her with recommendations for the cuts in the Athletic Department that were being required in 2003. The follow-up committee, consisting of four members of an original Task Force, indicated that they were opposed to across the board cuts, and further recommended that the first two sports to be considered for cuts were tennis and golf.

Chancellor Thomas and Vice Chancellor Robinson made the final decision in June 2003 as to which cuts should be made in the Athletics Department. The decision was made to eliminate the golf and tennis programs at UMR. It is uncontroverted that plaintiff met with Robinson in February 2003 for approximately an hour to discuss the grievances that he had filed with defendant. Accordingly, Robinson was aware of plaintiff's grievances when his positions were eliminated.

At the time the golf program was eliminated, defendant was paying plaintiff approximately $9,008 per year in salary and benefits for his position as Head Golf Coach. Defendant asserts that plaintiff's position as the Assistant Manager at the Clubhouse and Head Golf Coach were eliminated due to financial problems that were facing the University in 2003

5

and that the Golf Course was operating at a deficit. While this deficit had been covered in the past with Residential Life money, Thomas informed Robinson that her department needed to either eliminate that deficit, or the Golf Course would be sold or closed. Robinson asked Associate Vice Chancellor James Murphy to give her recommendations as to how to eliminate the deficit at the Golf Course. Murphy determined that the University was allocating more resources than were needed to management positions at the Golf Course, and that the University needed to reduce expenses at the Golf Course and allocate more resources to course maintenance.

The allegation that it was necessary to eliminate plaintiff's position as the Assistant Clubhouse Manager because of financial difficulties of the UMR Golf Course is strongly controverted by the plaintiff. Plaintiff asserts that other measures could have been taken and were in fact never considered before eliminating plaintiff's position. Murphy does not recall there being any documents that discuss the decision to eliminate plaintiff's position as the Assistant Clubhouse Manager.

In June 2003, plaintiff was working only 10 hours per week at the Golf Course. Defendant asserts that the Assistant Manager position was a position that the Golf Course could function without and still remain open. By eliminating the Assistant Manager position held by plaintiff, the budget at the Golf Course would break even. Robinson followed Murphy's recommendation, and the position of Assistant Manager was eliminated. At the time Murphy and Robinson made the decision to eliminate plaintiff's position, Robinson knew that plaintiff was the person who held that position. The Head Tennis Coach position was also eliminated. The Head Tennis Coach in 2003 was a Caucasian male. Following plaintiff's termination, he filed a Charge of Retaliation with the EEOC and Missouri Commission on Human Rights

6

("MCHR") in October 2003.

It is uncontroverted that there were sixteen employees who worked at the UMR Golf Course in the fiscal year 2003. Plaintiff was the only employee whose job was eliminated. At the time his job as the Assistant Clubhouse Manager was eliminated, plaintiff was the only African-American employee who worked at the UMR Golf Course. It is also uncontroverted that plaintiff never received an unsatisfactory performance evaluation of his job duties by the defendant.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." EEOC v. Liberal R-II Sch. Dist., 314 F.3d 920, 922 (8th Cir. 2002) (quoting Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir. 1999). "In addition 'summary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence.'" EEOC, 314 F.3d at 922 (quoting Jacob-Mua v. Veneman, 289 F.3d 517, 520 (8th Cir. 2002)).

### III. Discussion

A. Counts I & II: Plaintiff's Title VII Discrimination Claims

In Counts I and II of his Complaint, plaintiff alleges that he was discriminated against based upon his race when he was terminated from his positions as Head Golf Coach and Assistant Clubhouse Manager at UMR. Pursuant to Title VII, in order to establish a *prima facie* case of race discrimination, plaintiff must show that (1) he is a member of a protected class; (2) that he was meeting the employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004). A claim for discrimination should be analyzed using the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Under that framework, plaintiff must first establish a *prima facie* case of discrimination or retaliation. Johnson v. Ready Mix Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). If the plaintiff can make out a *prima facie* case, the employer must come forward and identify a legitimate, non-discriminatory reason for the adverse employment action. Tolen, 377 F.3d at 882. If the

8

Case 2:04-cv-04003-SOW   Document 54   Filed 01/09/06   Page 8 of 13

employer meets this burden of production, the presumption raised by the *prima facie* case disappears, and the burden shifts to the plaintiff to show that the articulated reason was a pretext for discrimination. Id.

It appears that plaintiff's allegations that the University assigned him an improper FTE in 1996 and failed to promote him over Rosenburg in 2001 are time-barred. Plaintiff complains that his FTE for the Head Golf Coach position was lower than the FTE assigned to the prior Head Golf Coach, and that this constituted discrimination. Plaintiff did not file a Charge of Discrimination regarding his beliefs with the EEOC or the MCHR until November 2002, some six years after the alleged discrimination. A party must file a charge of discrimination within either 180 or 300 days of the date of the act or lose the ability to recover for it. Nat'l R.R Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Furthermore, in September 1998, the University increased plaintiff's total FTE to 75%, and made this change retroactive to September 1996, thus awarding plaintiff all his benefits retroactively. Plaintiff also claims that the University failed to afford him an opportunity to apply for a position that was given to Neal Rosenburg in July 2001. Again, plaintiff failed to file any charge of discrimination until November 2002.

Plaintiff's claims that the University discriminated against him based on race by terminating his employment as the Golf Coach and Assistant Clubhouse Manager in June 2003 are not time-barred. Under the direction of the United States Supreme Court, this Court must analyze these claims according to the McDonnell Douglas framework.

The parties concede that plaintiff is able to prove the first three elements of a *prima facie* case of race discrimination. Defendant contends that plaintiff is not able to satisfy the fourth

element: that similarly situated employees outside the protected class were treated differently. Defendant points out that the only similarly situated employee to plaintiff was the Head Tennis Coach, a Caucasian male, who was treated the same when the tennis program was eliminated at UMR as a result of financial problems. Plaintiff responds that Rosenburg, a Caucasian male, was similarly situated to plaintiff in that he was the only other management employee at the UMR Golf Course. Indeed, plaintiff was treated differently than Rosenburg when Rosenburg was promoted.[2] Plaintiff has presented evidence from which a reasonable jury could infer that Rosenburg was promoted over plaintiff contrary to the University's own promotion policy.

Once the plaintiff makes out a *prima facie* case for discrimination, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason for the adverse employment decision. Defendant has stated that the budget issues facing the campus as a whole caused the defendant to identify areas that could be cut. After recommendations, Chancellor Thomas and Vice-Chancellor Robinson made the final decision that the Golf and Tennis programs should be eliminated. The elimination of the golf program necessarily led to the elimination of plaintiff's position as Head Golf Coach. Defendant claims that cuts to the Golf Course budget were also necessary. The Court agrees that budget concerns are legitimate reasons for terminating employees.

Next, the burden shifts back to the employee to demonstrate that the non-discriminatory

---

[2]As noted above, plaintiff's allegation that defendant's failure to promote him over Rosenburg in 2001 constituted discrimination is time-barred. Indeed, plaintiff informs the Court that he is not seeking to recover damages for any discriminatory acts that occurred prior to his termination by defendant. However, as the Supreme Court recognized in National R.R., 536 U.S. at 113, an employee may use prior discriminatory acts as background evidence in support of a timely claim.

reason offered by the employer is a pretext for discrimination. Plaintiff argues that the Golf Course was only running at a budget deficit of $1,100 and to eliminate a position that paid more than $13,000 per year, plus benefits, in order to wipe out this deficit is unfounded. Furthermore, plaintiff points to the lack of documentation as to the decision to eliminate plaintiff's position as the Assistant Clubhouse Manager due to budget concerns. Plaintiff also claims that there were other measures that could have addressed the budget concerns rather than terminating him. For instance, defendant continued to pay Rosenburg as a full-time employee during three months in the winter when the Golf Course was closed and Murphy never considered reducing Rosenburg's hours to save money instead of eliminating plaintiff's position. Defendant claims that the fact that plaintiff was only working 10 hours per week at a salary of $1,102.99 per month was a determinative factor in the decision to eliminate his position, yet Murphy testified that at the time he and Robinson made the decision to eliminate plaintiff's position as the Assistant Clubhouse Manager, he did not know how many hours per week plaintiff was actually working. The Court believes that a reasonable jury could infer that the true reason for plaintiff's dismissal was discriminatory based on these inconsistencies.

The Court finds that plaintiff has presented no evidence that the budget concerns facing the University were pretext for his termination as Head Golf Coach at UMR. Both the golf and the tennis programs were eliminated due to the budget concerns. The Head Tennis Coach, a Caucasian male, was also terminated due to these concerns. Yet, plaintiff has presented some evidence that the budget concerns with respect to the Golf Course were a pretext for his termination as the Assistant Clubhouse Manager. Even though the University might have made a determination that resources at the UMR Golf Course needed to be cut back because of

legitimate budgetary concerns, the facts surrounding the measures taken, namely that the only action taken was to terminate plaintiff, an individual whom the University knew had filed discrimination grievances, must be presented to a jury.

B. Count III: Plaintiff's Retaliation Claim

To establish a *prima facie* case of retaliation, an employee must show that (1) he engaged in statutorily protected activity; (2) the employer took adverse employment action against him; and (3) the adverse employment action was causally related to plaintiff's protected activity. Tolen, 377 F.3d at 882. The third element is the only element that presents an issue for the Court to consider. To establish a causal connection between plaintiff's protected activities and the adverse employment action, he must prove that defendant's retaliatory motive played a part in the adverse employment action. Gilooly v. Missouri Dept. of Health and Senior Serv., 421 F.3d 734, 739 (8th Cir. 2005). "Circumstantial evidence may be used to establish a causal connection between the protected activity and the subsequent adverse employment action." Broadus v. O.K. Indus., 238 F.3d 990, 991 (8th Cir. 2001).

Plaintiff filed his first Charge of Discrimination with the EEOC in November 2002. The final decision to eliminate the golf and tennis programs at UMR was made seven months later in June 2003. The decision to eliminate plaintiff's position at the Golf Course was made in June 2003 as well. Defendant contends that the passage of seven months is not sufficient to show any causal link. Yet plaintiff has demonstrated that Debra Robinson and James Murphy had actual knowledge of his protected activity, namely that he had filed grievances alleging discrimination. Plaintiff claims that he can demonstrate a causal connection between his complaints of discrimination and his termination by showing that the reason offered by defendant for plaintiff's

12

termination is unfounded.

The Court believes that plaintiff has presented some evidence from which a reasonable jury could infer that there was a causal connection between plaintiff's termination as Assistant Clubhouse Manager and his grievances. The Court finds that plaintiff has presented no evidence of a causal connection between plaintiff's termination as Head Golf Coach and his grievances.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that defendant The Curators of the University of Missouri's Motion for Summary Judgment (Doc. # 49) is granted in part and denied in part. It is further

ORDERED that plaintiff's claims that defendant discriminated and retaliated against him by terminating his position as Head Golf Coach are dismissed. It is further

ORDERED that plaintiff's claims that defendant discriminated and retaliated against him by terminating his position as Assistant Clubhouse Manager survive summary judgment.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 1-9-06